**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHARLES A.,** | **Civil Action No. 18-1158 (SDW)** |
| **Petitioner,** | |
| v. | **OPINION** |
| **CHARLES GREEN,** | |
| **Respondent.** | |

**WIGENTON**, District Judge:

Presently before the Court is the *pro se* petition for a writ of habeas corpus of Petitioner, Charles A., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer, the Government filed a response to the Petition (ECF No. 8), to which Petitioner has replied. (ECF No. 9). For the following reasons, this Court will deny Petitioner's habeas petition without prejudice.

**I. BACKGROUND**

Petitioner is a native and citizen of Haiti who was initially admitted to the United States as an immigrant in August 2012. (Document 1 attached to ECF No. 8 at 6). On February 14, 2017, Petitioner was convicted in the Superior Court of New Jersey, Essex County, of aggravated criminal sexual contact and criminal restraint. (*Id.*). For these crimes, Petitioner received a five year suspended prison sentence and was placed on parole supervision for life. (*Id.* at 10). Following his release on his suspended sentence into parole supervision, Petitioner was taken into custody by immigration officials on June 7, 2017. (Document 2 attached to ECF No. 8 at 2). He was thereafter served with a notice to appear for removal proceedings on June 12, 2017 charging

him with removability based on his criminal history. (*Id.*). Petitioner was thereafter held pursuant to 8 U.S.C. § 1226(c), and has remained incarcerated since June 2017 under that statute. (*Id.*).

While incarcerated, Petitioner has appeared before the immigration courts for removal proceedings on multiple occasions. The first proceeding occurred on June 27, 2017, when Petitioner's hearings were adjourned so that Petitioner could prepare and acquire counsel. (Document 3 attached to ECF No. 8 at 2). Petitioner thereafter filed a motion for a continuance on July 31, 2017, resulting in his proceedings being adjourned until August 22, 2017. (*Id.*). On August 22, 2017, Petitioner once again requested an adjournment so that he could prepare his applications for relief, which was granted. (*Id.*). Petitioner sought and received another continuance in September 2017. (*Id.*). When Petitioner sought yet another continuance on October 18, 2017, however, the immigration judge denied his request. (*Id.*). On October 24, 2017, the immigration judge determined that an individual merits hearing was necessary, and adjourned the proceedings until December 7, 2017. (*Id.*). When Petitioner appeared on that date he once again requested and was granted a continuance until February 2018. (*Id.*). Petitioner thereafter filed two further continuance requests, resulting in his hearing being adjourned until May 2018. (*Id.* at 2-3). It is not clear whether Petitioner appeared for his hearing in May 2018 from the record before this Court. Notwithstanding, it is clear that as of May 1, 2018, Petitioner's immigration proceedings had barely begun to proceed and that the delays in Petitioner's case over the last year are almost entirely the result of Petitioner's own requests. (*Id.* at 2-3).

## II.  DISCUSSION

### A.  Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).


### B.  Analysis

### 1.  Petitioner is properly subject to detention under 8 U.S.C. § 1226(c)

Although Petitioner's original habeas petition was largely concerned with the propriety of his continued detention pursuant to 8 U.S.C. § 1226(c), in his reply brief he belatedly argues that he should not be subject to detention under § 1226(c) because he was never "released" from criminal custody and thus the authority to detain him under the statute never arose.  Petitioner's argument is utterly without merit. Section 1226(c) states that immigration officials "shall take into custody any alien" who is either deportable or inadmissible because of his having committed certain classes of criminal offense "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  Petitioner contends that, because he

received a suspended sentence and thus was not placed into a prison from which he could be "released," he does not fall within the statute's command. The statute itself refutes this argument. As the statute makes abundantly and perfectly clear, an alien who is placed on "parole, supervised release, or probation" after his criminal sentencing has been "released" within the meaning of the statute. Regardless of whether Petitioner was released on bail prior to his criminal sentencing, at the time of his sentencing he was in state custody, and his placement on parole for life with a suspended sentence was a "release" within the meaning of the statute sufficient to trigger his susceptibility to detention under 8 U.S.C. § 1226(c). Petitioner readily admits that he committed a qualifying offense, and thus his release into parole supervision triggered the Government's authority to detain him without bail under the statute. Petitioner's contention to the contrary is no more than a self-serving misinterpretation of the word "released." The statutory text clearly establishes that his placement on parole supervision after a suspended sentence qualifies as a "release." Likewise, to the extent Petitioner contends that his arrest by immigration officials five months after his sentence deprives immigration officials of the authority to detain him because he was not detained "when released," that argument is foreclosed by the Third Circuit's ruling in *Sylvain v. Attorney Gen. of the United States*, 714 F.3d 150, 157-160 (3d Cir. 2013) (holding that a delay between an alien's release and his being arrested pursuant to 8 U.S.C. § 1226(c) did not deprive immigration officials of authority to hold the alien under § 1226(c) without bond). Petitioner is properly held pursuant to § 1226(c).

**2. Petitioner is not entitled to relief from detention**

In his main claim, Petitioner challenges his continued detention under § 1226(c) pending the conclusion of his removal proceedings. This Court recently summarized the legal basis for a

challenge to detention under § 1226(c) in *Dryden v. Green*, No. 18-2686, 2018 WL 3062909

(D.N.J. June 21, 2018). As this Court explained in that matter,

> [t]he Supreme Court first considered the propriety of prolonged detention pursuant to § 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003). Upon a review of the statute, the authority of Congress to detain aliens pending removal, and the usual time frame associated with detention under the statute, the Court determined in *Demore* that the statute was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In reaching this conclusion, the Court noted that in most cases detention under the statute lasted only a month and a half and that even in cases where an appeal was taken to the Board of Immigration Appeals, detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point in the form of the conclusion of removal proceedings. *Id.* at 529. Ultimately, as the Court found the statute constitutional, the *Demore* Court rejected Petitioner's challenge even though Petitioner had spent slightly longer than average in detention – a period of approximately six months. *Id.* at 530. Thus, after *Demore* it was clear that immigration detention under § 1226(c) was facially valid, and that detention for less than six months would not be sufficient to support an as applied challenge to detention under the statute.

> In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), however, the Third Circuit concluded that detention under § 1226(c) would become constitutionally suspect if it continued for a prolonged period of time well beyond the six months discussed in *Demore*. In that case, the Third Circuit explained that while mandatory detention without an individualized hearing for a brief period, such as that discussed in *Demore,* was constitutionally sound, excessively prolonged detention would be unreasonable and "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. Turning to the statute itself, the Third Circuit found that, in cases involving prolonged detention lasting several years, mandatory detention could become unreasonable and thus unconstitutional if that detention continued absent a hearing. The Court of Appeals, however, did "not believe that Congress intended to authorize prolonged, unreasonable detention without a bond hearing," and thus determined that § 1226(c) must be read to "contain[] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that

is reasonable in length [and the statute] yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose" when this "implicit limitation" is exceeded. *Id.* at 235.

The Third Circuit thus avoided its constitutional concerns with prolonged detention under § 1226(c) by reading this limitation into the statutory text. *Id.* Based on this implicit limitation, the *Diop* panel held that § 1226(c) "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." 656 F.3d at 231. The determination of whether a given period of detention is reasonable is a fact specific inquiry "requiring an assessment of all of the circumstances of a given case" *Id.* at 234. Reasonableness in this context is "a function of whether [continued detention without bond] is necessary to fulfill the purpose of the statute," specifically protecting the public and ensuring that the petitioner attends his removal proceedings. *Id.*

The Third Circuit refined this approach to the statute in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). In *Chavez-Alvarez*, the Third Circuit reiterated that § 1226(c) should be read to contain an implicit reasonableness limitation, and that detention beyond the point of reasonableness absent a bond hearing would be unconstitutional. *Id.* at 475. While the Third Circuit had declined to adopt a bright line rule for determining reasonableness based solely on the passage of time in *Diop*, s*ee* 656 F.3d at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014), the Third Circuit did provide guidance on that point in *Chavez-Alvarez*. Specifically, the Third Circuit in *Chavez-Alvarez* held that, at least where the Government fails to show bad faith on the part of the petitioner, "beginning sometime after the six-month timeframe [upheld by the Supreme Court in *Demore v. Kim*, 538 U.S. 510, 532-33 (2003),] and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties [will outweigh] any justification for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d at 478. Thus, the Third Circuit held that the implicit time limitation the Third Circuit read into § 1226(c) would, in the ordinary case absent bad faith, be reached sometime prior to one year of detention. *Id.*

For several years, the *Chavez-Alvarez* remained the applicable rule for determining whether detention comported with Due Process in this circuit. The Supreme Court's February 2018 decision in *Jennings v. Rodriguez*, 538 U.S. ---, 138 S. Ct. 830

(2018), however, explicitly rejected the practice of reading implicit time limitations into unambiguous statutes such as § 1226(c). As the Court explained in *Jennings*,

> [Section] 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in [§ 1226(c)]." Section 1226(c) states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c) then goes on to specify that the Attorney General "may release" one of those aliens "*only if* the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk. § 1226(c)(2) (emphasis added).

> [Section] 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue "pending a decision on whether the alien is to be removed from the United States." § 1226(a).

> . . . the Court of Appeals held[] that § 1226(c) should be interpreted to include an implicit . . . time limit on the length of mandatory detention. . . . [T]hat interpretation falls far short of a plausible statutory construction.

> In defense of th[is] statutory reading, respondents first argue that § 1226(c)'s "silence" as to the length of detention "cannot be construed to authorize prolonged mandatory detention, because Congress must use 'clearer terms' to authorize 'long-

term detention.'" . . . But § 1226(c) is *not* "silent" as to the length of detention. It mandates detention "pending a decision on whether the alien is to be removed from the United States," § 1226(a), and it expressly prohibits release from detention except for narrow, witness-protection purposes. Even if courts were permitted to fashion . . . time limits out of statutory silence, they certainly many not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy.

Indeed, we have held as much in connection with § 1226(c) itself. In *Demore v. Kim*, 537 U.S. [at 529,] we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out that detention under § 1226(c) has "a definite termination point": the conclusion of removal proceedings. As we made clear there, that "definite determination point" – and not some arbitrary time limit devised by the courts – marks the end of the Government's detention authority under § 1226(c).

Respondents next contend that § 1226(c)'s limited authorization for release for witness-protection purposes does not imply that other forms of release are forbidden, but this argument defies the statutory text. By expressly stating that the covered aliens may be released "only if" certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.

. . . .

We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings "only if" the alien is released for witness-protection purposes.

*Id.* at 846-47. Having determined that the statute contains no implicit time limitations, and having previously determined in *Demore* that § 1226(c) is facially constitutional, the Supreme Court observed that the only challenge to detention under § 1226(c) which

remains viable after *Jennings* is an individual petitioner's challenge to the constitutionality of the statute as applied to him. *Id.* at 851-52. Because both *Diop* and *Chavez-Alvarez* based their holdings on the Court of Appeals' reading of an implicit reasonableness-based time limitation into § 1226(c), and because *Jennings* clearly rejected that approach, it is clear that *Jennings* has abrogated *Diop* and *Chavez-Alvarez*, and only an individualized as applied constitutional challenge to the statute remains for Petitioner and those in similar circumstances[.]

Although the Third Circuit's ultimate rulings in *Diop* and *Chavez-Alvarez* have been abrogated by *Jennings*, and those two cases are no longer binding upon this Court, it does not follow that those two cases should be ignored. The constitutional reasoning that underlay the Third Circuit's invocation of the constitutional avoidance canon still provides some persuasive guidance to how this Court should address § 1226(c) claims. Specifically, the Court accepts that the "constitutionality of [detention pursuant to § 1226(c) without a bond hearing] is a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Chavez-Alvarez*, 783 F. 3d at 474 (quoting *Diop*, 656 F.3d at 232, 234). This Court likewise is mindful that "any determination on reasonableness [must be] highly fact specific" and that "at a certain point – which may differ case by case[] – the burden to an alien's liberty outweighs" the Government's interest in detention without bond," *id.* at 474-75, and that detention which is so unreasonable as to amount to an arbitrary deprivation of liberty cannot comport with the requirements of the Due Process Clause. *Id.* at 474; *see also Demore*, 538 U.S. at 432 (Kennedy, J., concurring). Because, however, *Jennings* foreclosed the constitutional avoidance basis provided by the Third Circuit in its determination that detention will normally become suspect between six months and a year, and because *Jennings* leaves open only the question of whether § 1226(c) is unconstitutional as applied to the petitioner, it is insufficient that Petitioner's detention has merely become suspect by reaching this six month to a year threshold, in order for Petitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause. If Petitioner's detention has not become so unreasonable or arbitrary that continued application of the statute is unconstitutional as applied to Petitioner, § 1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief. *Jennings*, 138 S. Ct. at 846-47.

*Dryden*, 2018 WL 3062909 at \*2-4.

In *Dryden*, this Court applied legal precedent and determined that detention pursuant to §
1226(c) for just over a year was not sufficient to render the statute unconstitutional as applied in a
case where the majority of the delay in the petitioner's removal proceedings was the fault of the
petitioner and the Government had not acted in bad faith nor been responsible for any significant
delay. *Id.* at 5. That same reasoning forecloses Petitioner's request for relief here. In this matter,
Petitioner's removal proceedings stalled for nearly a year while Petitioner requested and received
numerous continuances. Indeed, at the time the Government filed its response in this matter,
Petitioner had yet to have his first merits hearing in his removal matter as Petitioner's repeated
continuance requests had prevented the hearing from occurring for more than six months. Given
the fact that Petitioner himself is responsible for nearly all of the delay in his removal proceedings,
this Court is mindful of the Third Circuit's admonition in *Chavez-Alvarez* that an alien "should not
be rewarded with a bond hearing that they would not otherwise get under the statute" because the
alien had "merely gam[ed] the system to delay their removal." 783 F.3d at 476. This portion of
the rationale set forth in *Chavez-Alvarez* is clearly applicable in the instant matter. In his reply
brief, Petitioner freely admits that he is removable under the statute, but in any event has thwarted
any progress being made in his immigration proceedings for a year. Petitioner's delay tactics do
not warrant relief. As Petitioner has been responsible for nearly all of the delays in his removal
proceedings and has done little more than drag his feet for the year he has been in detention, this
Court cannot conclude that § 1226(c) is unconstitutional as applied to Petitioner. Petitioner's
habeas petition is therefore denied.

## III. CONCLUSION

For the reasons expressed above, this Court denies Petitioner's habeas petition without prejudice.  An appropriate order follows.

Dated: July 10, 2018                    *s/ Susan D. Wigenton*
                                        Hon. Susan D. Wigenton,
                                        United States District Judge